UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sandra V. Morrissey,

Plaintiff

v.

MEMORANDUM OPINION AND ORDER
Civil No. 00-62(MJD/JGL)

General Mills, Inc.,
A Delaware Corporation,

Defendant.

---

William J. Egan, PLC for and on behalf of Plaintiff.

Joel E. Abrahamson, Leonard Street and Deinard, Professional Association for and on behalf of Defendant.

---

Plaintiff, Sandra Morrissey, was employed by Defendant General Mills, Inc. ("General Mills") for twenty-five years. During the last eleven years of her employment, she worked in the position of Inventory Accountant.

In 1996, Plaintiff was diagnosed as suffering from Alpha$_1$-Antitrypsin Deficiency ("A$_1$AD"), which causes deterioration of the body's tissue cells, attacking first the cells of the lungs. In June 1998, Plaintiff's condition worsened and upon the advice of her physician, she asked her supervisor if General Mills would allow her to telecommute. A meeting was scheduled between Plaintiff and General Mills personnel to determine whether telecommuting would be feasible. Yet, before such meeting occurred, Plaintiff fell, breaking her leg in two places. Thereafter, General Mills looked into whether Plaintiff's position was one



OCT 0 3 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD OCT 0 3 2001
DEPUTY CLERK

amenable to telecommuting, and determined that it was not because certain essential job functions had to be performed at the work site.

General Mills informed Plaintiff of its decision to deny her the opportunity to telecommute in September 1998. At that time, General Mills further informed Plaintiff that no other positions were available for her. At General Mills' direction, Plaintiff sought and ultimately received disability benefits. At present, Plaintiff receives monthly disability benefits from General Mills.

Plaintiff filed suit against General Mills, asserting claims of disability discrimination. Shortly after this suit was filed, General Mills offered Plaintiff a part-time, telecommuting position. The position was created by combining the inventory control functions from two different inventory accounting clerk positions to create one thirty-hour per week position. Plaintiff declined the offer because it was only a temporary position, 12 to 18 months, and because she would net approximately the same amount as she received in disability benefits. Plaintiff also asserts that she was devastated by General Mills's treatment of her after she requested an accommodation, and as a result, returning to work for General Mills was not an option. Currently before the Court is General Mills' motion for summary judgment.

Standard for Summary Judgment

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). To

determine whether genuine issues of material fact exist, the court determines materiality from the substantive law governing the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material. Id. A material fact dispute is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. Id. at 248-49.

Disability Claim

The American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. was enacted, in part, to protect disabled persons from discrimination in their employment because of their disability. 42 U.S.C. § 12101. See also, Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.03, Subd. 1(2). To establish a claim of disability discrimination under the ADA or the MHRA, Plaintiff must establish that 1) she is disabled, as defined in the ADA; 2) she is qualified to perform the essential functions of the job, with or without reasonable accommodation; and 3) she has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises. Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1206 (8th Cir. 1997).

There is no dispute that Plaintiff is disabled, as defined by the ADA. However, to prevail on her claim of disability discrimination, Plaintiff must put forth evidence that she is nonetheless a qualified person with a disability. To make this determination, the Court uses a two-part test. Gaul v. Lucent Technologies, Inc., 134 F.3d 576 (3rd Cir. 1998)(citing 29 CFR pt. 1630, App. at 353-54). First, the Court must consider whether Plaintiff possesses the

prerequisites for the position, such as education, work experience, licenses, etc. Id. Second, the Court must consider whether Plaintiff can perform the essential functions of the position with or without reasonable accommodation. Id. Whether or not Plaintiff is a qualified disabled person must be determined at the time of the employment decision. Id.

The parties do not dispute that Plaintiff possesses the prerequisites for the position. Instead, what is at issue here is whether Plaintiff could perform the essential functions of her job with reasonable accommodation. Plaintiff asserts that based on her disability, and the character of her job duties, she could perform the essential functions of her job by telecommuting from home. General Mills counters that certain of Plaintiff's essential job functions had to be performed on site, and that if Plaintiff were allowed to telecommute, certain essential job functions could be performed only through restructuring Plaintiff's job and reassigning such functions to other employees.

While the Plaintiff has the ultimate burden of proving that she is a qualified disabled person, "an employer who disputes the plaintiff's claim that she can perform the essential functions of a job must put forth evidence establishing those functions." Heaser v. The Toro Company, 247 F.3d 826, 831(8th Cir. 2001). To determine the essential functions of a job, the Court may refer to evidence of what the employer deems to be essential functions, written job descriptions, the amount of time spent on a particular job function, the consequences of not requiring the incumbent to perform the function, and the current work experience

of incumbents in similar jobs. Id. (quoting Mortitz v. Frontier Airlines, Inc., 147 F.3d 784, 786-87 (8th Cir. 1998)).

The parties do not dispute that the inventory accountant position has six principal job functions: 1) inputting shipments, receipts, and production information from contractors into the company's inventory control system; 2) reconciling purchasing and inter-plant orders; 3) organizing and filing information from contractors; 4) inputting contractor invoices for payment; 5) providing assistance to contract analysts; and 6) maintaining voucher files and storage requirements of vouchers. Morissey Aff., Exs. 1 and 2.

There is no dispute that the first two job functions listed are essential job functions that could be performed on a telecommuting basis.[1] General Mills argues that Plaintiff also conceded in her deposition that she couldn't perform the filing functions of her job off site. However, Plaintiff merely stated that she could not pick up files, or carry them around. Plaintiff Dep. 268-270. She maintained that she could organize and put together files, but that she could not physically ready them for long-term storage. Id. It thus appears that an issue exists as to the extent this job function could be performed at home.

The Court further finds that a genuine issue exists as to whether Plaintiff could provide assistance to contract analysts. Plaintiff asserts that such assistance could be provided over the phone.

---

[1] General Mills asserts, however, that the company was in the process of implementing a new software system that would eliminate the inventory data entry function; a factor that was considered in evaluating the feasibility of allowing Plaintiff to telecommute.

As to the remaining job function listed, the inventory processing duty, the parties are in agreement that it is an essential function of Plaintiff's job. Hase Dep. p. 71 (invoice processing comprised 30% of the job); Plaintiff Dep. 232 (invoice processing function comprised 25% of her position). Thus, there exists no genuine issue that this was an essential job function.

General Mills asserts that this job function could not be performed off-site without restructuring the position and hiring a new employee. General Mills asserts that its internal financial controls require that inventory accounting clerks pay only from original invoices that have original signatures. General Mills' Auditing Department reported that original invoices would have to be logged out if brought to Plaintiff's home, then logged backed in after Plaintiff had processed them. Warnert Dep. 27; Hase Dep. 70. Bonnie Korn, another General Mills inventory accounting clerk, estimated that it would take approximately 30 seconds to complete a logging entry for an invoice. Korn Aff., ¶ 5. Based on Plaintiff's deposition testimony that she processed 150 invoices, three days per week, General Mills argues that the task of logging invoices in and out would take approximately seven and one-half hours per week, and that requiring Ms. Korn or another employee to perform this task was not possible, as they did not have the extra capacity to take on this task.

Plaintiff responds that Plaintiff's supervisor, Gayanne Hase, testified at her deposition that in one month, she counted the invoices processed, and reported the total as 2,652. Hase Dep. 71-73. As there were two inventory accounting clerks, each clerk would have processed approximately 1,300 in one month; which

which averages to about 60 per day. Plaintiff asserts that it would only take approximately 10 seconds to log an invoice in or out. Plaintiff Aff. ¶ 38. Therefore, the task of logging invoices in or out would only take approximately twenty minutes per day. Clearly, there is a dispute as to the number of invoices processed in one week, and the time it would take to log the invoices in/out.

Irregardless of the number, it is clear that the invoices have to be couriered to Plaintiff's home. General Mills has also presented evidence such courier would have to be dispatched to Plaintiff's home several times a day. This is so because for certain invoices, immediate payment was required. In her deposition, Plaintiff acknowledged that certain invoices were high priority that had to be paid immediately in order for General Mills to receive a vendor discount, and that she received such invoices on a daily basis. Plaintiff Dep. 330-333. It is thus evident that allowing Plaintiff to telecommute would necessitate the hiring of an additional employee as a courier.

Even if a courier were hired, General Mills has also presented evidence that transporting the invoices in such a manner harbors certain risks. One such risk is that of disclosure of confidential, proprietary information. It asserts that each invoice contains the price of a finished or semi-finished product for which General Mills has specifically contracted, and that this information is proprietary and confidential, and are thus maintained in locked confidential file cabinets. Warnert Dep. 28-30; Hase Dep. 68-69; Wrench Dep. 17. The reason such pricing information was to be kept confidential was explained by Gayanne Hase at her deposition:

> There are instances when we have more than one company making the same product for us and possibly it's at different rates. We would want— we would not want that information to be made public.

Hase Dep. 68.

Plaintiff argues that the alleged confidentiality concerns are not consistent with the Auditing Department's conclusion that the invoices would have to be logged in/out. The Court does not agree. As noted by General Mills, the confidentiality concerns of the Contract Financial Operations department are separate and distinct from the concerns of the Auditing Department as to internal financial controls. See, Hase Dep. 70 (the logging in of invoices addressed only auditing concerns). General Mills further notes that the pricing information contained in the invoices is of such a sensitive nature that it is regulated by FTC rules.

Under the ADA, a plaintiff must offer her employer a suggestion of a reasonable accommodation that would allow her to perform the essential functions of her job. Whillock v. Delta Air Lines, Inc., 926 F.Supp. 1555, 1563 (N.D. Ga. 1995) aff'd 86 F.3d 1171 (11th Cir. 1996)(citing 29 C.F.R. 1630, App. at 416-417). At the same time, "[a]n employer is not obligated to provide an employee the accommodation [s]he requests or prefers, the employer need only provide some reasonable accommodation." Hennenfent v. Mid Dakota Clinic, P.C., 164 F.3d 419, 422 n. 2 (8th Cir. 1998)(citing Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996)). It is part of the Plaintiff's burden of persuasion to show that an effective accommodation exists, the costs of which do not exceed

the benefits. Borkowski v. Valley Cent. School Dist., 63 F.3d 131, 139 (2nd Cir. 1995).

The Court must also keep in mind that the ADA does not require an employer to eliminate essential functions of a job, but a reasonable accommodation may include job restructuring, part-time or modified work schedules. 34 CFR § 104.12(b); 45 CFR § 84.12.(b). "This does not mean that an employer is required to offer those accommodations in every case." Heaser at 831. In addition, such accommodations may not cause undue hardship on defendant's operation. Hernandez v. City of Hartford, 959 F.Supp. 125, 132 (D. Conn. 1997).

Construing the facts in the light most favorable to Plaintiff, it is clear that the inventory processing function cannot be performed by Plaintiff on a telecommuting basis, without undue hardship to General Mills, given the risks concerning confidentiality and delays which would cause the loss of vendor discounts. Even if confidentiality were not a concern, allowing Plaintiff to perform this function at home would result in another employee taking on the additional duty of logging invoices in and out, and would require General Mills to hire an additional employee to act as a courier. As General Mills is not required to reallocate essential functions of a job under the ADA, or hire additional employees, Plaintiff cannot show that she is a qualified disabled person entitled to protection. Lloyd v. Hardin County, Iowa, 207 F.3d 1080, 1084 (8th Cir. 2000); Heaser, at 832 (employer not required to create new part-time position or to reallocate essential functions of the job).

General Mills also argues that to the extent that Plaintiff has a disability, it is a total disability that renders Plaintiff unable to work, with or without accommodation. This argument is based upon Plaintiff's representations to the Social Security Administration and the Internal Revenue Service that she is totally disabled. Plaintiff argues that although she stated that she was unable to work, she qualified this statement by noting that she believed she could work from home.

In Lloyd, supra, the plaintiff made the same argument to address the conflict between his assertions of total disability in his SSI application and his assertions that he was a qualified individual within the meaning of the ADA. The court determined that as the plaintiff had failed to show that he could perform the essential functions of his job with accommodation, he also failed to overcome the presumption of total disability created by his assertions to the SSI. Lloyd, at 1084-1085. The same is true in this case. Plaintiff has failed to show that she can perform the essential functions of her job with accommodation, therefore the presumption created by her statements in her disability applications have not been overcome.

Plaintiff has raised additional arguments that General Mills did not engage in an interactive process with her to determine whether a reasonable accommodation exists. Plaintiff has not put forth any evidence, however, that alternative accommodations existed. Thus, Plaintiff has not shown that a more interactive process would have been fruitful.

Plaintiff's arguments concerning General Mills' telecommuting policy is similarly unavailing. As the policy specifically recognizes, not all positions or candidates are suitable to telecommuting. And as discussed above, Plaintiff has failed to raise genuine issues that her position was suitable to telecommuting.

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's Complaint is dismissed with prejudiced.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Date: Sept. 28, 2001

Michael J. Davis
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# Please forward this announcement to the recipient of this fax.

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500